**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**DEMETRIUS FOSTER,**

       **Petitioner,**          **CIVIL ACTION NO. 04-CV-73794-DT**

  vs.

                                    **DISTRICT JUDGE DENISE PAGE HOOD**

**HUGH WOLFENBARGER,**       **MAGISTRATE JUDGE MONA K. MAJZOUB**

       **Respondent.**
_____/

**REPORT AND RECOMMENDATION**

**I.**    **RECOMMENDATION:** This Court recommends that Petitioner's Petition for Writ of Habeas Corpus (Docket nos. 1, 6) be **DENIED**.

**II.**    **REPORT:**

    **A.**    **Procedural History**

A jury convicted Petitioner of second-degree murder in the Circuit Court for the County of Wayne on February 23, 2000 and sentenced him to 30 to 50 years in prison. (Docket no. 6 at 2). Petitioner was also convicted of a felony firearms offense for which he received a consecutive two-year prison term. (*Id*.; docket no. 12 at 1). The Michigan Court of Appeals remanded the case for an evidentiary hearing on the sole issue of whether Petitioner was denied effective assistance of counsel at trial by counsel's failure to call Arthur Daniels as an alibi witness. (Docket no. 1 at 49). Although the trial court granted a motion for new trial on that basis, the Court of Appeals vacated that order on May 3, 2002. (Docket no. 1-2 at 3). On March 25, 2003 the Court of Appeals affirmed

Petitioner's conviction and sentence. (*Id*. at 5-13). The Michigan Supreme Court denied Petitioner's application for leave to appeal on September 29, 2003. (*Id*. at 15).

Petitioner filed the instant habeas corpus petition on September 28, 2004. (Docket no. 1). The district court ordered the case held in abeyance on February 24, 2005. (Docket no. 5). Petitioner filed a motion for relief from judgment in the state circuit court which was denied on April 4, 2005. (Docket no. 6 at 3). The Michigan appellate courts denied leave to appeal that decision on March 23, 2006 and August 29, 2006. (*Id*.). Petitioner filed an amended federal habeas petition on September 21, 2006 which was construed as a motion to reopen the case and was granted. (Docket nos. 6, 7). Respondent filed a Response brief on February 21, 2008. (Docket no. 12). This case has been referred to the undersigned for a Recommendation. (Docket no. 15). The Court dispenses with oral argument, and Petitioner's petition is now ready for decision.

Petitioner raises three grounds for relief. He alleges that he received ineffective assistance of counsel because trial counsel failed to pursue an alibi defense, he was denied due process of law by the trial court's denial of his motion for directed verdict due to insufficient evidence of first-degree murder, and he was denied a fair trial and effective assistance of counsel by counsel's failure to request a jury instruction on voluntary manslaughter. (Docket no. 6 at 6).

### B. Factual Background

The Court of Appeals of Michigan summarized the evidence against Petitioner as follows:

> This case stems from allegations that, during the early morning hours of November 17, 1998, defendant shot the decedent as a result of an earlier encounter at the decedent's former girlfriend's house. The decedent and Monique Brassell had lived together for three years, with their two children, and separated shortly before the incident. On November 16, at approximately 11:00 p.m., defendant, Rodney Taylor, and Rhonda Howard were visiting Brassell's home. Brassell had never previously met defendant. At approximately 1:00

a.m., defendant and Brassell engaged in sex. At approximately 2:00 a.m., the decedent, along with Deborah Hollins, Javan Carter, and Jerry Williams, went to Brassell's home. The decedent saw a truck outside of the house and began banging on the door. After Brassell opened the door, the decedent pushed past her and went into the house searching for another man. Hollins, Carter, and Williams also went into the house. The decedent was angered to find defendant inside and told him to leave. The decedent attacked Brassell and threatened to kill her. The decedent then went outside, smashed the windshield of defendant's Ford truck with a sledgehammer, and left. Brassell called the police, who were dispatched to her home around 2:15 a.m. and left around 2:30 a.m. Brassell testified that, while the police were at her house, defendant went outside and noticed that the decedent had smashed his windshield. Brassell indicated that defendant was angry when he came back into the house and that she tried to calm him down by volunteering to pay for the damage to his truck. Brassell further testified that, during her brief conversation with the police, she told them where the decedent lived. Defendant was in the room at that time. Defendant left Brassell's home after the police left. Howard and Taylor also left in a separate car. Taylor testified that he did not see defendant again that morning.

Hollins testified that, after leaving Brassell's home, she, the decedent, Carter, and Williams went through a restaurant's drive-thru. She indicated that the decedent was angry and that, after leaving the restaurant, they went to the decedent's cousin's house in search of a gun, which the decedent never obtained. The group then attempted to visit Hollins' boyfriend, but he was not home. Eventually, Hollins, Carter, and Williams took the decedent home. Hollins testified that, as the decedent was getting out of her car, a man approached the driver's side of the car, looked at her, and shot at the decedent approximately seven times. At trial, Hollins identified defendant as the shooter. Neither Carter nor Williams could positively identify defendant as the shooter but testified that the shooter was wearing a green jacket. There was testimony that defendant was wearing a green jacket at Brassell's home. The police were dispatched to the scene of the shooting between 3:00 a.m. and 3:30 a.m. The police recovered ten spent gun casings from a .40 caliber semiautomatic weapon. The decedent died as a result of a gunshot wound in the back.

*People v. Foster*, No. 226311, slip op. at 1-2 (Mich. Ct. App. Mar. 25, 2003) (Docket no. 1-2 at 5).

### C.      Standard of Review

Because Petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Among other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

### D.      Ineffective Assistance of Counsel–Alibi Defense

The Sixth Amendment right to counsel and the corollary right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish ineffective assistance of counsel, Petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id.* at 687. These two components are mixed questions of law and fact. *Id*. at 698. Further "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry

if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[Petitioner] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citations omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. With respect to the prejudice prong of the *Strickland* test, the ultimate inquiry is "whether there is a reasonable probability that, absent [counsel's] errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

Petitioner's first contention is that he received ineffective assistance of counsel because counsel failed to pursue an alibi defense. (Docket no. 6 at 23). This issue was explored at the post-conviction evidentiary hearing held by the trial court on remand from the Court of Appeals. After that hearing the Court of Appeals found that Petitioner had "failed to overcome the presumption that defense counsel's failure to call the proposed alibi witnesses was sound trial strategy." (Docket no. 1-2 at 11-12). The Court of Appeals also noted several factors which a jury might draw upon to discount the testimony of the proposed alibi witness, Arthur Daniels. (*Id.* at 12). This Court reviews the decision of the Court of Appeals on this issue and not the decision of the trial court which

conducted the evidentiary hearing.[1]  28 U.S.C. § 2254(d).

### 1. Allegedly Erroneous Factual Findings

Petitioner alleges that the Michigan Court of Appeals made several clearly erroneous findings of fact.  (Docket no. 6 at 24-26).  However, "the Supreme Court has held that '[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable–a substantially higher threshold.'" *Owens v. Guida*, 549 F.3d 399, 404 (6th Cir. 2008) (quoting *Schriro v. Landrigan*, 550 U.S. 465 (2007)).  Habeas relief is available only for "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).

Petitioner argues that the finding of the Michigan Court of Appeals that trial counsel did not believe that the alibi would support the defense theory is not supported by the record.  (Docket no. 6 at 25).  However, the transcript of the post-conviction hearing shows that trial counsel testified that the "defense was that my client didn't do the shooting or wasn't present.  But I just didn't feel that the alibi witness, the one I talked to, would be able to convey that to the jury."  (Post-conviction motion hearing transcript at 27).  Based on this testimony, the Court of Appeals' finding is not unreasonable.

Petitioner next argues that the Court of Appeals' remark that trial counsel acknowledged that presenting an alibi witness could be damaging to a case depending on the witness was

---

[1] Petitioner argues that the Court of Appeals erred in various ways regarding its orders to the trial court and in reviewing the trial court's findings.  (Docket no. 6 at 29-34).  However, violations of state law or state court procedural rules are not grounds for relief in this habeas proceeding.  *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (federal court bound by state court determination of state law); *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (state's application of its own rules).

"disingenuous." (Docket no. 6 at 25). However, the transcript of the hearing shows that counsel testified, when questioned whether there is a danger in calling an alibi witness, that "[s]ure there's a danger. It depends on the witness." (Post-conviction motion hearing transcript at 31). Based on this testimony, the Court of Appeals' remark was not unreasonable.

The final group of alleged erroneous facts concern the witness and Petitioner being close friends, that the witness did not go to the police to inform of the alibi, and that the witness did not tell defense counsel that there were supposedly two other people at his home (along with Petitioner) on the night and early morning of the shooting. (Docket no. 6 at 25). Petitioner does not argue that the Court of Appeals erroneously found these facts. Rather, Petitioner argues that the facts have "nothing to do with trial counsel's failure to present the alibi." (*Id*.). The alibi witness testified at the post-conviction hearing in 2002 that he had known Petitioner since 1987 or 1988 and "grew up with" Petitioner's brother. (Post-conviction hearing transcript at 6, 11). The witness testified that Petitioner was a friend and that he had visited Petitioner in jail and prison on more than one occasion. (*Id*. at 11). The witness also testified that when he learned that he could prove that Petitioner wasn't at the shooting scene because Petitioner was at his house he did "nothing then." (*Id*. at 17). The witness didn't say anything to anyone until Petitioner came to trial. (*Id*. at 18). The witness did not talk to the police about the alibi. (*Id*.). The witness did not talk to the other two persons who supposedly could also alibi Petitioner about going to the police. (*Id*.). As far as the witness knew, these two persons did nothing to notify defense counsel about their information. (*Id*.). Based on the witness's testimony, the Court of Appeals' findings are not unreasonable.

### 2.   Unreasonable Application of Supreme Court Law

Petitioner argues that "the Michigan Court of Appeals clearly violated federal law by

ignoring the trial court's findings" regarding Petitioner's alibi defense. (Docket no. 6 at 28). The Supreme Court case cited by Petitioner fails to support this statement, however. *Massaro v. United States*, 538 U.S. 500 (2003). In *Massaro*, the Court decided that an ineffective assistance of counsel claim could be brought in a collateral proceeding under 28 U.S.C. § 2255 whether or not the petitioner could have raised the claim on direct appeal. The Court noted that the forum best suited to developing facts surrounding the adequacy of representation is the trial court, however such a statement does not lead to the conclusion that the Michigan Court of Appeals violated federal law in this action.

Petitioner also relies upon *Leonard v. Michigan*, 256 F. Supp. 2d 723 (W.D. Mich. 2003) in which the court found that the Michigan Court of Appeals unreasonably disregarded statements of the trial court regarding defense counsel's deficiencies on a claim of ineffective assistance. However, that finding in and of itself did not show a violation of federal law. It was one of many factors which led the court to conclude that the Court of Appeals had unreasonably applied the *Strickland* standard. (*Id*. at 728-34). Accordingly, the question for this court is not whether the Michigan Court of Appeals improperly acted with respect to the trial court and its findings.[2] The

---

[2] The trial court's comments suggest that it believed the failure to present an alibi witness constitutes ineffective assistance in all instances. (Post-conviction hearing transcript at 53 ("I think that it is ineffective not to present an alibi defense if that's what you have period.")). In finding that counsel provided ineffective assistance by not calling Mr. Daniels as a witness, the trial court without doubt improperly applied federal law to the extent that it believed that the failure to call an alibi witness in all instances constitutes ineffective assistance. *See Strickland*, 466 U.S. 668; *Small v. Brigano*, 134 Fed. App'x 931 (6th Cir. 2005) (affirming denial of habeas relief on ineffective assistance claim for not calling potential defense witness when, considering witness likely would have been impeached and strength of government's case, the prejudice prong of *Strickland* test not met). However, it is not clear whether such a legal finding was the determinative factor in the trial court's decision because at another point it stated that, "I think that there probably could have been a different outcome in this particular matter" if the witness had been presented. (Post-conviction hearing transcript at 56).

question is, considering the finding above that Petitioner has failed to show an unreasonable determination of facts, whether the decision of the Michigan Court of Appeals is contrary to, or involves an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.  28 U.S.C. § 2254(d).

Petitioner cites several federal cases in which courts have found that defense counsel's failure to investigate or present an alibi defense constituted ineffective assistance.  (Docket no. 6 at 35-37).  Such a conclusion is necessarily very fact-specific.  Petitioner does not present a Supreme Court case in which the facts are materially indistinguishable from this case.  *See Bailey v. Mitchell*, 271 F.3d 652, 655-56 (2001) (under section 2254(d) federal court may not grant relief on any claim under "unreasonable application" standard unless state court applied rule that contradicts the governing law in a Supreme Court case; the state court decision confronts a set of facts materially indistinguishable from a decision of the Supreme Court and arrives at different result; the state court identifies a correct governing rule but unreasonably applies it to the facts; or the state court either unreasonably extends a legal principle from a Supreme Court precedent to a new context where it should not be applied or unreasonably refuses to extend it where it should apply).

The Michigan Court of Appeals found that Petitioner had failed to overcome the presumption that defense counsel's failure to call the proposed alibi witness was sound trial strategy.  (Docket no. 1-2 at 11-12).  The court reviewed the evidence presented at the post-conviction hearing where defense counsel testified that he talked to the alibi witness on the phone for 15-20 minutes and concluded that he was "vague" and did not include the necessary details of the night and early morning.  (*Id*. at 12, 35).  The court also noted that the alibi witness and Petitioner were good friends, the alibi witness never went to the police with the alibi information and only told defense

counsel about it during Petitioner's trial.  (*Id*. at 12).

In *Strickland*, the Supreme Court stated that "scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689.  Petitioner must "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" (*Id*.). Strategic choices made after thorough investigation of law and facts relevant to the plausible options are "virtually unchallengeable." (*Id*. at 690).  Strategic choices made after less than complete investigation are reasonable "precisely to the extent that reasonable professional judgments support the limitations on investigation." (*Id*. at 690-91).  This law is consistent with the standard applied by the Michigan Court of Appeals.  Petitioner has failed to show that the Court of Appeals applied the incorrect standard of law.

The question then becomes whether Petitioner has shown that the Court of Appeals unreasonably applied this standard to the facts of this case.  The evidence is undisputed that counsel talked to the alibi witness.  Mr. Daniels testified that he talked to counsel in the hallway during Petitioner's trial. (Post-conviction hearing transcript at 9).  Counsel testified that strategically he did not believe that "it was a strong alibi" and that the witness did not "go into great detail with [counsel] about what he was doing with" Petitioner.  (*Id*. at 26, 32).  The testimony of Mr. Daniels was that he and his two friends were playing cards and playing drinking games (with beer) on the night in question. Mr. Daniels' brother left them at approximately 2:00 a.m.  A "little while" later Petitioner arrived at the house.  (*Id*. at 15).  The witness said that he was not watching the clock when Petitioner arrived and it could have been after 2:30 a.m. when Petitioner arrived.  (*Id*. at 16). The parties agree that the shooting occurred at approximately 3:15 a.m.  (*Id*. at 36).  Although Mr. Daniels testified that it was not after 3:00 when Petitioner arrived, he gave no basis for this statement

except that he didn't think it was that late. (*Id*. at 16). Petitioner acknowledged that he did not reveal in a written statement he wrote several months after the shooting that there were other persons with him and Petitioner. (*Id*. at 20).

Petitioner argues that counsel failed to adequately investigate the facts of the alibi. (Docket no. 6 at 35). According to Petitioner, counsel should have questioned the witness more thoroughly and asked specifically about other possible alibi witnesses. (*Id*.). The evidence is that counsel spoke to the witness for 15 to 20 minutes. (Post-conviction hearing transcript at 35). There is no evidence whether other witnesses were discussed. Counsel was, however, able to gather that the witness's recall of the details were vague. Counsel also was in the midst of Petitioner's trial when the witness provided this information, according to the witness. This timing limits the amount of investigation that counsel could have reasonably performed. Under these circumstances, counsel's failure to conduct a more thorough examination of this alibi defense was not unreasonable.

Because counsel reasonably investigated the alibi defense information, his strategic choice not to present the witness is "virtually unchallengeable." *Strickland*, 466 U.S. at 690. Even if counsel's investigation is considered unreasonable, and thus challengeable, Petitioner would still have to show that he was prejudiced due to counsel's deficient conduct. *Id*. at 687. The Michigan Court of Appeals identified several factors that support a finding that counsel's failure to present this witness did not prejudice the defense. (Docket no. 1-2 at 12). This conclusion is supported by the witness's failure to provide a specific time for Petitioner's arrival at his house.[3] His arrival could have been after 2:30 up until 3:00, according to the witness's testimony. This is 15 minutes before

---

[3] Although not cited by the Court of Appeals, this Court notes that Petitioner did not present any evidence from these other two possible alibi witnesses showing that they could and would have presented testimony similar to Mr. Daniels.

the shooting occurred. The witness's testimony could have been found to be credible by a jury but inaccurate as to the time of arrival especially when Mr. Daniels had been drinking and admittedly was not watching the clock. There were also several bases on which the witness's credibility could have been attacked at trial such as his friendship with Petitioner, his visits to the jail and prison to see Petitioner, and the fact that Mr. Daniels waited so long to advise anyone of the alibi information. (*Id*.).

Finally, the evidence against Petitioner while not overwhelming was substantial. Petitioner was solidly identified as the shooter by one of the people at the scene of the shooting who was only a few feet away from the shooter (docket no. 13-10 at 57-61), the jacket Petitioner was wearing that night was identified as being the same one that the shooter wore by another witness (docket no. 13-11 at 67-68), and there was the altercation between the victim and Petitioner immediately before the shooting after which Petitioner was upset that the victim had broken the windshield of his vehicle. There was also evidence that Petitioner knew where the victim lived which is where he was shot. (Docket no. 13-7 at 75). Considering all of the evidence, there is no reasonable probability that the result of the proceeding would have changed had the alibi witness's testimony been presented. *Strickland*, 466 U.S. at 695.

In sum, Petitioner has failed to establish that the Michigan Supreme Court decision either is based on an unreasonable determination of the facts or is contrary to, or involves an unreasonable application of, clearly established Federal law as established by the Supreme Court. Petitioner's first ground for relief should therefore be denied. 28 U.S.C. § 2254(d).

### E. Due Process Violation–Insufficient Evidence

Petitioner next argues that he was denied due process of law by the trial court's denial of his

motion for directed verdict because there was insufficient evidence of first-degree murder. (Docket no. 6 at 39). Petitioner argues that he moved for a directed verdict of not guilty on the charge of first-degree murder, but the trial court denied the motion. (*Id.*). The motion should have been granted, according to Petitioner, because there was no evidence of premeditation and deliberation. (*Id.*).

Sufficient evidence supports a conviction if, after viewing the evidence in the light most favorable to the prosecution, the court can conclude that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). The Michigan Court of Appeals found, after reciting the above legal standard, that:

> The evidence in this case, viewed in the light most favorable to the prosecution, was sufficient to enable a jury to infer all the necessary elements of first-degree murder. The prosecutor theorized that defendant was angry because the decedent had smashed the window of his truck and that he subsequently went to the decedent's house, waited for him, and shot him as he exited his friend's vehicle. At trial, there was evidence that, during the early morning of the incident, defendant and the decedent had an altercation at the decedent's former girlfriend's house. Upon leaving, the decedent smashed the window of defendant's truck with a sledgehammer. There was evidence that defendant was angry about the decedent's actions and that the decedent's former girlfriend tried to calm him down by volunteering to pay for the damage. The evidence showed that the police arrived approximately ten minutes after the decedent left and stayed for approximately fifteen minutes. Although defendant claims that there is no evidence that he knew where the decedent lived, the evidence showed that he was present when the decedent's former girlfriend told the police where he lived. There was also evidence that defendant left the house after the police and, although the decedent had left earlier, he did not go directly home. Thus, a rational trier of fact could infer that defendant had time to arrive at the decedent's home before the decedent arrived. The evidence showed that, as the decedent was getting out of his friend's car, defendant approached the driver's side, looked at the driver, and began shooting toward the decedent, who was on the passenger side. The driver positively identified defendant at trial. Ten spent casings

> from the same weapon were recovered from the scene. The decedent died as a result of one gunshot wound in the back. This evidence, viewed in the light most favorable to the prosecution, was sufficient to sustain a conviction for first-degree murder and, thus, the trial court did not err by denying defendant's motion for a directed verdict.

(Docket no. 1-2 at 8).

Petitioner does not argue that the Michigan Court of Appeals applied any incorrect legal standards. (Docket no. 6 at 39-41). Petitioner also does not identify any unreasonable fact-finding by any court. (*Id*.). Petitioner does contend that "there was no way [Petitioner] could have known Mr. Morris was going to be where he was when he was shot." (*Id*. at 39). However, at trial Ms. Brassell testified that she advised the police where the decedent lived and that Petitioner was present at that time. (Docket no. 13-7 at 75). Petitioner also points out the violent actions of the decedent at Ms. Brassell's home, however such actions do not prevent Petitioner from forming the premeditation and deliberation necessary to support a first-degree murder charge. (Docket no. 6 at 39-40).

Petitioner has failed to show that the decision of the Michigan Court of Appeals is either based on an unreasonable determination of the facts or is contrary to, or involves an unreasonable application of, clearly established Federal law as established by the Supreme Court. Petitioner's second ground for relief should therefore be denied. 28 U.S.C. § 2254(d).

**F.   Ineffective Assistance of Counsel–Voluntary Manslaughter Jury Instruction**

Petitioner next argues that although he claimed that he was misidentified as the shooter, the evidence supported the inference that, if the jury believed he did shoot at the victim, it was done in the heat of passion and out of fear caused by the death threats against him made by the decedent. (Docket no. 6 at 42). According to Petitioner, defense counsel should have requested a jury

instruction on voluntary manslaughter. (*Id.*). Because defense counsel argued at sentencing that the death occurred in a combative situation or in response to victimization of the offender by the decedent, Petitioner contends that there was no reasonable trial strategy in not asking for such an instruction. (*Id.* at 42-44).

The Michigan Court of Appeals found the following on this issue:

> Here, the evidence did not support a conviction for voluntary manslaughter, because there was no evidence to support a finding that defendant acted with reasonable provocation. The element of provocation distinguishes manslaughter from murder, and the provocation necessary to mitigate a homicide from murder to manslaughter is that which would cause the defendant to act out of passion rather than reason. *Sullivan, supra* at 518. Provocation is adequate only if it is so severe or extreme that it would provoke a reasonable person to lose control. *Id.* Here, defendant's conduct was allegedly based on the decedent smashing out the window of his truck a half hour or more before the shooting. During this lapse in time, defendant spoke to the decedent's former girlfriend, who told him that she would pay for the damage, and he also stayed at her home while she spoke to the police. Defendant left after the police and eventually went to the decedent's home. Simply put, defendant's actions are not indicative of a person acting with passion or hot blood. Because the evidence did not merit a voluntary manslaughter instruction, defense counsel was not ineffective for failing to seek such an instruction.

(Docket no. 1-2 at 10).

The Michigan Court of Appeals also found that Petitioner failed to overcome the presumption that counsel's failure to request a voluntary manslaughter instruction was sound trial strategy. (*Id.* at 11). The court noted that the defense strategy was to argue that defendant was not the shooter and had been erroneously identified. To argue that if Petitioner did shoot the victim it was the result of adequate provocation might have detracted from the misidentification defense. (*Id.*).

Petitioner contends that the refusal of the Michigan courts to hold an evidentiary hearing on this issue to allow him to build a record for it is contrary to clearly established federal law. (Docket no. 6 at 44-45). However, he fails to cite the federal law to which these rulings are supposedly contrary. (*Id.*). Petitioner argues for the same legal standard that the Michigan Court of Appeals applied, namely whether there was sufficient evidence to support a conviction for voluntary manslaughter. (Docket no. 1-2 at 10; docket no. 6 at 49). For the reasons stated by the Court of Appeals, the evidence presented at trial did not support such a conviction. Therefore, counsel did not perform deficiently by not requesting an instruction for voluntary manslaughter, and Petitioner fails to show that counsel's alleged error prejudiced him. *See Strickland*, 466 U.S. 668.

Petitioner has failed to show that the decision of the Michigan Court of Appeals is either based on an unreasonable determination of the facts or is contrary to, or involves an unreasonable application of, clearly established Federal law as established by the Supreme Court. Petitioner's third ground for relief should therefore be denied. 28 U.S.C. § 2254(d).

### III.     **NOTICE TO PARTIES REGARDING OBJECTIONS:**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*,

829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than ten days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: March 03, 2009         s/ Mona K. Majzoub
                              MONA K. MAJZOUB
                              UNITED STATES MAGISTRATE JUDGE


## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Demetrius Foster and Counsel of Record on this date.

Dated: March 03, 2009         s/ Lisa C. Bartlett
                              Courtroom Deputy